IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPHAT MUA, *et al.*

    *Plaintiffs,*

v.

STATE OF MARYLAND, *et al.*

    *Defendants.*

Civil Action No.: ELH-16-01435

**MEMORANDUM OPINION**

On May 12, 2016, plaintiffs Josephat Mua and Francoise Vandenplas, husband and wife who are self-represented, filed suit against the State of Maryland ("Maryland" or "State"); California Casualty Indemnity Exchange ("CCIE"), an insurance company; and Marsden & Seledee, LLC ("Marsden & Seledee" or "The Firm"), a law firm. *See* ECF 1, "Complaint." According to plaintiffs, defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*; and Maryland law with respect to events that transpired following a vehicular accident that occurred in August 2011. ECF 1, ¶ 8.[1]

The proverbial "kitchen sink" Complaint contains numerous causes of action, as follows: "Violation of Article 40 of the Maryland Declaration of Rights" (Count I; Count II); "Common Law – Abuse" (Count III); Retaliation (Count IV); Conspiracy (Count V); "Injunction Against Marsden & Seledee; California Casualty Indemnity Exchange for Unlawful Interference with the Administration and Enforcement of the Laws of Maryland" (Count VI); "Breach Of Duty"

---

[1] The Complaint alleges federal question and diversity jurisdiction based, *inter alia*, on 28 U.S.C. § 1332; 28 U.S.C. § 1367; and 42 U.S.C. § 1983. However, plaintiffs appear to be domiciled in Maryland and some of the defendants also appear to be domiciled in Maryland. Therefore, diversity of citizenship appears questionable. *See* 28 U.S.C. § 1332.

(Count VII); Negligence (Count VIII); "Discrimination And Unfair Termination Provisions" (Count IX); "Improper Termination Practice" (Count X); "Violation Of Fair Debt Collection Practices Act and Lack of license in Maryland" (Count XI); "(Legal Malpractice Against Defendants)" (Count XII); "Breach of Fiduciary Duty against Defendants" (Count XIII); and Fraud (Count XIV). *See* ECF 1 at 11–30.

Plaintiffs seek $10,000,000 in damages.  ECF 1 at 28.[2]  They also aver, *inter alia*, that the case *sub judice* is urgent because Vandenplas has been subject to illegal wage garnishment in connection with a contested obligation to reimburse CCIE for an alleged insurance overpayment. *See, e.g.*, ECF 1 at 9, 11, 13, 27.

Pursuant to Fed. R. Civ. P. 12(b)(1), and 12(b)(6), the State has filed a motion to dismiss, or in the alternative, for summary judgment (ECF 17), supported by a memorandum (ECF 17-1) (collectively, "State Motion to Dismiss") and an exhibit.  ECF 17-2.  Plaintiffs have responded (ECF 32, "Opposition"), supported by 40 exhibits, filed separately in paper format.  The State has not replied, and the time to do so has expired. *See* Local Rule 105.2(a).

CCIE and Marsden & Seledee also filed a joint motion to dismiss (ECF 10), pursuant to Fed. R. Civ. P. 12(b)(6), supported by a memorandum (ECF 10-1) (collectively, "Joint Motion to Dismiss"), and exhibits.  ECF 10-2 to ECF 10-5.  Plaintiffs have responded (ECF 31, "Opposition"), supported by 37 exhibits, filed separately in paper format.  Defendants have replied.  ECF 38 ("Reply").

---

[2]Along with the Complaint, plaintiffs filed a "Motion for Ex Parte Emergency Injunctive Relief and Immediate Hearing."  ECF 2. In the motion, plaintiffs asked the Court, *inter alia*, to "stop the garnishment of wages of Francoise Vandenplas . . . and to allow the complaints filed in this court, the appeal currently pending in Maryland Court of Appeals and in the Court of Appeals for U.S. Fourth Circuit . . . ."  *Id.* at 1–2.  The motion also included a "Request for Supersedeas Bond" pursuant to Fed. R. Civ. P. 62.  *Id.* at 7–8.  By Memorandum (ECF 3) and Order (ECF 4) of May 19, 2016, I denied plaintiffs' motion for injunctive relief.

In addition, CCIE and The Firm filed a motion for costs and attorneys' fees and for a pre-filing injunction against plaintiff (ECF 25), supported by a memorandum (ECF 25-1) (collectively, "Motion for Sanctions"), and numerous exhibits.   ECF 25-3 to ECF 25-47. Plaintiffs responded (ECF 31) and defendants replied.   ECF 38. Defendants also submitted a supplement to their Motion for Sanctions.   ECF 40.

Furthermore, on July 15, 2016, approximately two months after filing this suit, plaintiffs filed a notice of removal that was docketed in this case.   *See* ECF 24 ("Notice of Removal").[3]   In the Notice of Removal, plaintiffs attempted to remove the case of *California Casualty Indemnity Exchange v. Mua, et al.*, Case Number 9381D, from the Circuit Court for Montgomery County, pursuant to 28 U.S.C. §§ 1441-1447, 1404, 1406, and 1631.   ECF 24.   CCIE and Marsden & Seledee filed a joint motion to strike that notice of removal (ECF 28, "Motion to Strike"), supported by an exhibit.   ECF 28-1.   Plaintiffs have responded.   ECF 39.   Defendants have not replied, and the time to do so has expired.   *See* Local Rule 105.2(a).

No hearing is necessary to resolve the various motions.   *See* Local Rule 105.6.

For the reasons that follow, I shall grant both motions to dismiss.   I shall also grant the Motion to Strike.   But, I will deny the Motion for Sanctions.

## I.  Factual Background[4]

The lengthy Complaint is difficult to decipher.   According to plaintiffs, this "matter arises out of a motor vehicle incident that occurred on August 26th, 2011," in which Ms. Vandenplas

---

[3] It is unclear why the Notice of Removal was docketed in this case and was not assigned its own case number.

[4] Unless otherwise noted, the facts are derived from the Complaint. ECF 1. Based on the procedural posture of the case, I shall assume the truth of the factual allegations in the Complaint, to the extent that I can decipher them.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).  In addition, because the plaintiffs are self-represented, their pleadings must be "'liberally construed'" and "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

was involved.  ECF 1, ¶ 8.  Plaintiffs' claims are rooted in their insurance dispute with CCIE, which followed the motor vehicle accident, and in the alleged collection efforts by Marsden & Seledee to recover CCIE's overpayment of insurance benefits to plaintiffs.  *Id.* ¶¶ 8–21.

The driver who allegedly caused the motor vehicle accident was insured by Allstate Insurance Company ("Allstate").  ECF 1, ¶ 12. Plaintiffs were insured by CCIE at the time of the accident and presented CCIE with a claim for damages.  It appears that CCIE issued a check to plaintiffs in the amount of $5,128.83.  *Id.* ¶¶ 23, 24.  CCIE subsequently sought reimbursement for that sum.  *Id.* ¶¶ 23–33. Plaintiffs contested the reimbursement and litigation ensued.  The basis for the desired reimbursement is discussed, *infra*.

An electronic search in the Maryland Judiciary Case Search system yielded numerous results for cases in Maryland that involve litigation among plaintiffs, CCIE, and Marsden & Seledee.  *See* MARYLAND JUDICIARY CASE SEARCH CRITERIA, http://casesearch.courts.state. md.us/casesearch//process Disclaimer.jis (searching by name: Mua, Josephat) (last visited January 31, 2017).[5]

In July 2014, in the District Court of Maryland for Montgomery County, CCIE, represented by Joel Seledee, Esquire, of the law firm of Marsden & Seledee, sued Mua and Vandenplas to recover the disputed overpayment.  Case No. 0602-0005340-2014 ("State Case"). The complaint in the State Case is docketed as an exhibit at ECF 25-6.  It recites many of the

---

[5] As discussed, *infra, in* the context of a motion to dismiss, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. Appx. 200 (Mem), 2016 WL 2609617 (4th Cir. May 6, 2016). *Cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records"). However, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013) (abrogated on other grounds by *Reed v. Town of Gilbert, Ariz.*, ___ U.S. ____, 135 S. Ct. 2218 (2015), as recognized in *Cahaly v. Larosa*, 796 F. 3d 399 (4th Cir. 2015)).

same underlying facts of this case.

In the State Case, CCIE alleged that in March 2012 Mua and Vandenplas received a settlement of $8,813.66 from Allstate and asserts that Mua and Vandenplas pursued and received a claim for property damages from CCIE after Allstate had already compensated them for the same damages.  *Id.*, ¶¶ 5-7.[6]  To prevent a windfall double recovery, CCIE sought to recover $5,128.83 from Mua and Vandenplas, on the theory of unjust enrichment.  On December 10, 2014, judgment was entered against Mua and Vandenplas, in the amount of $5,128.83, plus costs.

At about the same time, on December 8, 2014, plaintiffs filed suit in this Court, captioned *Mua and Vandenplas v. California Casualty Indemnity Exchange and Marsden & Seledee, LLC*, PJM-14-3810 ("First Federal Case").  The First Federal Case was assigned to Judge Messitte.

Then, on January 8, 2015, about a month after judgment in the State Case was entered against Mua and Vandenplas and in favor of CCIE, Mua and Vandenplas removed the State Case to this Court.  *See* PJM-15-060 (sometimes called the "Second Federal Case" or the "State Case"), ECF 1; *id.* at ECF 35-1 at 2; *id.* at ECF 40.  In other words, plaintiffs removed the State Case after they lost that case in State court.  The Second Federal Case was also assigned to Judge Messitte.  Soon after, plaintiffs filed a notice (*id.* at ECF 33) indicating that the Second Federal Case was related to the First Federal Case. Notably, the facts of the First Federal Case and the Second Federal Case (*i.e.*, the State Case) are largely the same as those set forth in the case *sub judice*.

Judge Messitte dismissed the First Federal Case on August 17, 2015.  *Id.* at ECF 30; ECF

---

[6] Plaintiffs implicitly acknowledge a recovery from Allstate.  In their Complaint, they state, ECF 1, ¶ 25: "Plaintiffs did in fact incur expenses which were not covered by Allstate insurance."

31. The Fourth Circuit affirmed on February 29, 2016. *Id.* at ECF 37; ECF 41.

On February 4, 2015, Judge Messitte remanded the Second Federal Case (PJM-15-060) to State court, finding that it was untimely removed and that, in any event, Mua and Vandenplas had failed to set forth a valid basis for subject matter jurisdiction. *Id.* at ECF 38 at 2–3; ECF 39; ECF 40. In his Memorandum Opinion (*id.* at ECF 38), Judge Messitte noted that there had already been a trial on the merits in the State Case in December 2014, and that, prior to removal, judgment had been entered in favor of CCIE and against Mua and Vandenplas. *See id.* at ECF 38 at 2; *see also* PJM-15-060, ECF 35, ¶¶ 5, 6; ECF 35-1 at 2; ECF 35-2. Judge Messitte cited ECF 35-2, which is a copy of the Judgment in the District Court of Maryland for Montgomery County, dated December 10, 2014, in the amount of $5,128.83, plus costs of $118, entered in favor of CCIE and against both Mua and Vandenplas, jointly and severally.

In the case *sub judice*, plaintiffs appear to allege that CCIE is not entitled to the $5,128.83 awarded in the State Case and that CCIE failed to assist them adequately after the accident, such as by failing to reimburse them for the cost of a rental car, which cost "more than $1,000," and was a benefit to which they were allegedly entitled under their insurance policy. ECF 1 at 2, ¶¶ 18, 21, 24, 33. Plaintiffs also complain that CCIE canceled their insurance policy, without notice, which required plaintiffs to obtain new, more expensive insurance. *Id.* ¶¶ 65, 68. Further, plaintiffs maintain that the insurance policy was canceled either because of Mua's national origin, which is Kenyan (*id.* ¶¶ 81, 83), or in retaliation for Mua's protected political activity of filing "complaints of wrongdoing in Maryland against the Union with ties to CCIE." *Id.* at 2.

The Firm, based in Baltimore (ECF 1, ¶ 4), was hired by CCIE to recover the outstanding overpayment. *See, e.g.*, *id.* at 2. Plaintiffs take issue with The Firm's debt collection practices.

*Id.*  They contend that Marsden & Seledee "is liable to Plaintiffs both as a direct matter of respondeat superior for the aforesaid negligence [CCIE] and/or such other and/or different of its agents as discovery shall disclose."  ECF 1, ¶ 103.

And, as to Maryland's involvement in the suit, plaintiffs allege the following, ECF 1 at 2: "The state of Maryland agents engaged in white collar crimes in order to advance the illegal scheme and awarded Defendant CCIE using the violation of the law to the detriment of the Plaintiffs.  Defendant CCIE and Marsden & Seledee engaged in bribery and interfered with the Maryland State personnel to advance their illegal agenda in Maryland in violation of the constitution."  Plaintiffs also lodge accusations that all defendants conspired to tamper with certain court filings in the State Case.  ECF 1 at 2; *id.* at 10; *id.*, ¶¶ 41, 52, 124.

More recently, plaintiffs filed two nearly identical complaints involving many of the same issues raised in this suit.  These cases were filed in the Circuit Court for Baltimore City, 24-C-16-02625, and in the Circuit Court for Montgomery County, Case 420645V.  Plaintiffs then sought to remove both of these cases to federal court. ELH-16-3247; ELH-16-3267.  In both cases, I remanded because "the right of removal is vested exclusively in a defendant."  *See* ECF 12 at 3 in ELH-16-3247; ECF 8 at 3 in ELH-16-3267.

## II. Standard of Review

The Joint Motion to Dismiss is predicated on Rule 12(b)(6).  ECF 10.  The State's Motion to Dismiss is predicated on Rule 12(b)(1) and Rule 12(b)(6).

### A.  Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *Goines v. Valley Cmty, Servs, Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*,

__U.S. __, 133 S. Ct. 1709 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' ...." (citation omitted)); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, __U.S. __, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual

matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, __U.S.__, 132 S. Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, __U.S.__, 132 S. Ct. 1960 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555–56 (2007). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc);

*accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies...if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

Under limited exceptions, a court may consider documents outside the complaint, without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits...." *Goines*, 822 F.3d at 166 (citations omitted); *see U.S. ex rel. Oberg*, 745 F.3d at 136 (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). See *Goldfarb*, 791 F.3d at 511.

Of relevance here, a court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted). To be "integral," a document must be one "that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied,___* U.S. ____, 132 S. Ct. 115 (2011); *Philips*, 572 F.3d at 180. Pursuant to Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Moreover, in the context of a motion to dismiss, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL

5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. Appx. 200 (Mem), 2016 WL 2609617 (4th Cir. May 6, 2016). *Cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records"). However, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013) (abrogated on other grounds by *Reed v. Town of Gilbert, Ariz.*, ___ U.S. ____, 135 S. Ct. 2218 (2015), as recognized in *Cahaly v. Larosa*, 796 F. 3d 399 (4th Cir. 2015)).  Accordingly, as noted, I may take judicial notice of submissions in the earlier court cases, including the State Case and the First Federal Case.

Plaintiffs submitted one exhibit (ECF 1-2) with the Complaint (ECF 1) and numerous exhibits with their oppositions (ECF 31; ECF 32) to the motions to dismiss. Almost all of these exhibits are court documents, including complaints, motions, and exhibits that were previously filed in plaintiffs' other state and federal cases.  These documents were also filed in plaintiffs' appeal to the Fourth Circuit, No. 15-4048, arising from the dismissal of the First Federal Case. *See* PJM-14-3810, ECF 36. I may take judicial notice of these exhibits.  And, several of these court documents are also integral to the Complaint.

The remaining exhibits that plaintiffs submitted with their oppositions consist of emails written by Mua to various Maryland officials regarding allegations of retaliation and corruption in connection with plaintiffs' law suits.  These exhibits are not integral to the Complaint. Accordingly, I shall not consider them.

CCIE and Marsden & Seledee submitted exhibits with their Joint Motion to Dismiss (ECF 10) and Reply (ECF 38).  *See* ECF 10-1 to ECF 10-5; ECF 38-1; ECF 38-2.  Maryland also

submitted an exhibit (ECF 17-2) with its Motion to Dismiss.  ECF 17.  All of these exhibits are State and federal court documents, for which I may take judicial notice.

## B.  Rule 12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted) (alteration in original); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *accord Beck v. McDonald*, __F.3d.__, 2017 WL 477781, at *4 (4th Cir. Feb. 6, 2017); *Clear Channel Outdoor, Inc.*, 22 F. Supp. 3d at 524. In a factual challenge to subject matter jurisdiction, "the plaintiff bears the burden of proving" that subject matter jurisdiction is satisfied, "by a preponderance of the evidence." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir.), *cert. denied*, 558 U.S. 875 (2009). In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Moreover, "the district

court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction," *Kerns*, 585 F.3d at 192, "[u]nless 'the jurisdictional facts are intertwined with the facts central to the merits of the dispute.'" *Vuyyuru*, 555 F.3d at 348 (citation omitted). In particular, "the district court may ... resolve the jurisdictional facts in dispute by considering evidence ... such as affidavits." *Id.* When appropriate, the court may also "hold an evidentiary hearing to determine whether the facts support the jurisdictional allegations." *United States v. North Carolina,* 180 F.3d 574, 580 (4th Cir. 1999); *accord Beck*, 2017 WL 477781, at *4; *Kerns,* 585 F.3d at 192. In this posture, "'the presumption of truthfulness normally accorded a complaint's allegations does not apply.'" *Beck*, 2017 WL 477781, at *4 (citation omitted).

With respect to the contention that plaintiffs' claims are barred by Eleventh Amendment immunity, defendants seem to raise a facial challenge. Therefore, I shall assume the truth of plaintiffs' allegations.

It is not clear whether a motion to dismiss based on the Eleventh Amendment is properly considered pursuant to Rule 12(b)(1) or Rule 12(b)(6). *See Strong v. Swaim-Stanley*, WMN-12-cv-1924, 2012 WL 4058054 (D. Md. Sept. 13, 2012). Judge Titus addressed this uncertainty in *Beckham v. National R.R. Passenger Corp.*, 569 F. Supp. 2d 542 (D. Md. 2008). He said, *id.* at 548 (internal citations omitted, alteration added):

> [T]he Eleventh Amendment limits the ability of a federal district court to exercise its subject-matter jurisdiction over an action brought against a state or one of its entities. As such, although Eleventh Amendment immunity is not a "true limit" on this Court's subject matter jurisdiction, the Court concludes that it is more appropriate to consider this argument under Fed. R. Civ. P. 12(b)(1) because it ultimately challenges this Court's ability to exercise its Article III power.

Judge Titus's reasoning is persuasive. Therefore, I shall consider the Eleventh Amendment challenge under Rule 12(b)(1). *See also Abril v. Com. Of Virginia*, 145 F.3d 182,

184 (4thCir. 1998) (affirming the district court's dismissal of a claim barred by state sovereign immunity under Rule 12(b)(1)).

### III. Discussion

### A.  The State's Motion to Dismiss

#### 1.

The State's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.   ECF 17. Along with its Motion, Maryland submitted one exhibit (ECF 17-2), a Memorandum Opinion issued by Judge Messitte on March 31, 2016, in the following cases: PJM-14-2070; PJM-14-2334; and PJM-15-2249.

A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dep't, Inc. v. Montgomery Cty*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Md.*, ___ Fed. Appx. ____, 2016 WL 6958439, at *2-3 (4th Cir. Nov. 29, 2016) (per curiam). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify

parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights…." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action[]" and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

However, I do not need to convert the motion to one for summary judgment to consider the exhibit Maryland submitted.  This is because, in the context of a motion to dismiss, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting [it] into a motion for summary judgment." *Brown*, PJM-14-3454, 2015 WL 5008763, at *1 n. 3.

Accordingly, I decline to convert the Motion to one for summary judgment.  Instead, I shall construe it as a motion to dismiss.

2.

In its Motion to Dismiss, the State asserts that "Mua's claims are barred by 11th Amendment immunity, judicial immunity, sovereign immunity, *res judicata*, and collateral estoppel…" ECF 17; *see also* ECF 17-1.

As noted, the Complaint is far from clear about which of the various causes of action plaintiffs are bringing against Maryland, as opposed to the private defendants.  It appears that the State's involvement in this matter is limited to acts of its court system and court employees.  As

best as I can ascertain, plaintiffs claim that agents of the State tampered with State court documents in the State Case, in retaliation for Mua's political activities. *See, e.g.,* ECF 1 at 2-3, *id.*, ¶¶ 34-35, 41, 43, 46, 52, 124. Plaintiffs' FDCPA claim (Count XI) was not brought against Maryland; all Counts brought against Maryland appear to raise common law tort claims or constitutional tort claims alleging violations of the Maryland Declaration of Rights.   *See generally* ECF 1.

The State argues, ECF 17-1 at 9: "Because Maryland's limited waiver of immunity does not evidence any intent to be subject to Mr. Mua's claims for common law torts and Maryland Declaration of Rights claims in federal court, the claims must be dismissed[.]"  Plaintiffs assert, ECF 32 at 14: "The State of Maryland is not entitled to Eleventh Amendment immunity and any other immunity, as a matter of law under Title VI and Title VII or any other law."

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." The Eleventh Amendment did not create sovereign immunity, however. Rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011). The preeminent purpose of state sovereign immunity is "to accord states the dignity that is consistent with their status as sovereign entities...." *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).

Thus, states enjoy immunity from suits brought in federal court by their own citizens, even though the text of the Eleventh Amendment does not explicitly address such a scenario. *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890); *see also Board of Trustees of University of Alabama v.*

*Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."). In other words, under the Eleventh Amendment, a private individual is barred from bringing a suit against a state in federal court to recover damages, unless an exception to sovereign immunity applies. *See Coleman v. Court of Appeals of Md.*, 556 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247 (2011); *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted).

The Court of Appeals for the Fourth Circuit has noted three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state. In *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).... Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) .... Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618 (2002).

> None of the exceptions is applicable here.

First, as noted, Congress has the power to abrogate a state's sovereign immunity, but must do so pursuant to a valid grant of constitutional authority. *Garrett*, 531 U.S. at 363; *Lee-Thomas*,

666 F.3d at 249.  This exception is inapplicable because plaintiffs' claims against Maryland are raised under State law.

Second, although Mua seeks injunctive relief (ECF 1 at 5, 14-15, 28), this exception is not applicable.  This is because he does not seek injunctive relief against a State official.  *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 676 (1974); *Ex Parte Young*, 209 U.S. 123 (1908); *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269-70 (1997).

Third, although a state may waive its Eleventh Amendment sovereign immunity and permit suit in federal court, *see Lapides v. Bd. of Regents of Univ. Sys. of Ga.,* 535 U.S. 613, 618 (2002); *Lee-Thomas*, 666 F.3d at 249, Maryland has not waived its Eleventh Amendment immunity to a suit of this kind in federal court.  The test to determine whether a State has waived its immunity from suit in federal court is a "stringent" one.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996).  Under *Atascadero*, a court may find that a state has waived its Eleventh Amendment immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction."  *Id.* (internal quotation marks and alteration omitted); *accord Lee-Thomas*, 666 F.3d at 250-51.

The Maryland Tort Claims Act ("MTCA"), Md. Code (2014 Repl. Vol.), §§ 12-101 *et. seq.* of the State Government Article ("SG"), offers "a limited waiver of sovereign immunity and is 'the sole means by which the State of Maryland may be sued in tort.'" *Paulone v. City of Frederick*, 718 F. Supp. 2d 626, 637 (D. Md. 2010) (citation omitted); *see Condon v. Md.-Univ. of Md.*, 332 Md. 481, 492, 632 A.2d 753, 758 (1993); *Mitchell v. Housing Auth. of Baltimore City*, 200 Md. App. 176, 201–202, 26 A.3d 1012, 1027–28 (2011).  Maryland's waiver of

sovereign immunity in tort cases provides that "the immunity of the State and of its units is waived as to a tort action, *in a court of the State*, [provided that its liability may not exceed $200,000]." S.G. § 12–104 (emphasis added). *See also* S.G. § 12-103(2) (stating that under the MTCA, Maryland does not "waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States or any other state, including any defense that is available under the 11th Amendment to the United States Constitution").

The Fourth Circuit has explained, *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 397–98 (4th Cir. 1990) (citation omitted): "The waiver of sovereign immunity in the Maryland Torts [sic] Claims Act clearly limits the state's waiver of immunity to actions brought in the Maryland state courts....A state's waiver of immunity from suit in state court 'is not enough to waive the immunity guaranteed by the Eleventh Amendment.'"

Nonetheless, plaintiffs counter that Maryland has waived its right to sovereign immunity under Title VI and Title VII of the Civil Rights Act of 1964. This argument is perplexing because none of the counts of the Complaint refer to the Civil Rights Act. To be sure, the Complaint does state: "This is an action…to redress deprivation of rights secured by Title VII of the Civil Rights Act of I 964, 42 U.S. C. S 2000e et seq." ECF 1, ¶ 4. However, plaintiffs' thirty-page complaint does not mention employment discrimination.

Plaintiffs mention employment discrimination and retaliation in their Opposition. *See, e.g.,* ECF 32 at 4-6, 10, 13, 17. They appear to refer to arguments that Mua made in unrelated cases alleging, *inter alia*, employment discrimination against Mua's employer, the Board of Education of Prince George's County, and other defendants. *See Mua v. The Board of Prince George's County*, Civ. No. PJM-11-1198 ("Mua I"); *Mua v. The Maryland Office of the Attorney General et al.*, Civ. No. PJM-14-2070 ("Mua II"), *Mua v. The O'Neal Firm LLP et al.*, Civ. No.

PJM-14-2334 ("Mua III"), and *Mua v. The Board of Education of Prince George's County et al.*, Civ. No. PJM-15-2249 ("Mua IV").[7]  It is unclear what these claims have to do with the case at hand, which involves an alleged overpayment of automobile insurance by an insurer and efforts to recover the overpayment.  However, "'it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Mylan Laboratories, Inc. v. Akzo*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998).  In any event, plaintiffs fail to raise plausible employment discrimination claims in this case, as plaintiffs' employers are not named as defendants.

Furthermore, to the extent that plaintiffs' State law claims may be construed as claims asserted under 42 U.S.C. § 1983, the Supreme Court has made clear that Congress did not intend to abrogate a state's Eleventh Amendment immunity under § 1983. *See Quern v. Jordan,* 440 U.S. 332, 341, 99 S. Ct. 1139 (1979). Moreover, even if Maryland had waived its immunity, it is well established that states and their agencies are not considered "persons" under 42 U.S.C. § 1983. As such, states are not subject to federal civil rights claims under the statute. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 65 (1989).

Thus, this Court lacks jurisdiction over plaintiffs' claims asserted against Maryland.

---

[7]  Mua I was administratively closed on June 19, 2012, and stayed until plaintiff's "administrative proceedings in the County and State have concluded."  PJM-11-1198, ECF 81. And, by Order of April 12, 2016 (ECF 129), Judge Messitte denied without prejudice Mua's motion to reopen Mua I (ECF 115), "pending the resolution of the appeal of Plaintiff's termination from employment in Maryland state court." ECF 129.  As of this date, that case is still administratively closed. Judge Messitte dismissed *Mua II*, *Mua III*, and *Mua IV* in their entirety.  PJM-14-2070, ECF 45 (Memorandum Opinion); ECF 46 (Order).

## B.  The Joint Motion to Dismiss

The Complaint is far from clear about which causes of actions plaintiffs bring against CCIE and which are lodged against Marsden & Seledee.  In any event, it appears that plaintiffs' claims are premised on several grounds: 1) plaintiffs challenge the judgment in the State Case awarding $5,128.83 to CCIE and seek to invalidate the garnishment proceedings in the State Case; 2) they allege unlawful debt collection practices under the FDCPA; 3) plaintiffs allege that in 2012 CCIE failed to provide the statutorily required notice of non-renewal in 2012 and/or that the insurance policy was not renewed due to Mua's nationality; and 4) plaintiffs lodge claims against CCIE for benefits payable under the policy, including rental car fees.  The FDCPA claim is the only federal claim brought against CCIE and The Firm.

CCIE and Marsden & Seledee have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), based on the affirmative defenses of res judicata and failure to exhaust administrative remedies.  ECF 10.  As discussed earlier, a court ordinarily may not grant a Rule 12(b)(6) on the basis of an affirmative defense, unless the facts are clear from the face of the complaint.  However, the Fourth Circuit "has previously upheld the assertion of res judicata in a motion to dismiss." *Andrews v. Daw*, 201 F.3d 521, 524 n. 1 (4th Cir. 2000) (citing *Thomas v. Consolidation Coal Co.,* 380 F.2d 69, 75 (4th Cir. 1967)).

Here, I may take judicial notice of the State Case and the First Federal Case and consider related documentation in the context of the Joint Motion to Dismiss. *See Andrews*, 201 F.3d at 524 n. 1 ("[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact[.]").  On this basis, I will consider the res judicata defense.

1. Res Judicata

CCIE and The Firm argue that plaintiffs' suit constitutes an attempt to relitigate claims related to the judicial determination that plaintiffs are obligated to return $5,128.83 to CCIE. Therefore, they contend that these claims are barred by res judicata.  In addition, they contend that plaintiffs' claims related to CCIE's non-renewal of their insurance policy are also barred by res judicata.  *See* ECF 10-1 at 6-7.[8]  Defendants elaborate, *id.* at 7-9 (alterations added, emphases in original):

> [T]he rulings in the State Case and the [First] Federal Case bar the Plaintiffs' claims against CCIE and Marsden & Seledee regarding the $5,128.83 and non-renewal of insurance policy.
>
> *First,* Mr. Mua, Ms. Vandenplas, and CCIE were parties to the State Case. Those same parties, as well as Marsden & Seledee, were parties to the [First] Federal Case.
>
> *Second,* the Plaintiffs raised the same claim in the State Case (*i.e.,* that they had no obligation to return $5,128.83 to CCIE) that this Court refused to re-litigate in the [First] Federal Case and which Plaintiff now attempt to bring yet again in this New Federal Case. Furthermore, in the Complaint filed in this New Federal Case, the Plaintiffs have largely copied-and-pasted (word for word) from the Complaint in the [First] Federal Case as to the claims pertaining to CCIE's non-renewal of Plaintiffs' insurance policy.
>
> **Third,** after a trial on the merits, the District Court of Maryland for Montgomery County granted judgment in CCIE's favor against the Plaintiffs in the amount of $5,128.83, plus costs. That judgment was affirmed on appeal and the Maryland Court of Appeals denied Plaintiffs' petition for writ of certiorari. In the [First] Federal Case, this Court granted **with prejudice** Marsden & Seledee's Motion to Dismiss. Moreover, as to CCIE, this Court granted **with prejudice** CCIE's Motion for Judgment as to all claims arising out of CCIE's non-renewal of Plaintiffs' insurance policy; granted **with prejudice** CCIE's Motion for Judgment as to the FDCPA claim; and dismissed **with prejudice** all claims seeking to

---

[8] Defendants do not argue that plaintiffs' claims against CCIE for benefits payable under the insurance policy, including car rental fees, are barred by res judicata.  Presumably, this is because, in the First Federal Case, Judge Messitte dismissed any claims regarding entitlement to "benefits purportedly owed under the insurance policy", without prejudice, for lack of subject matter jurisdiction.  PJM-14-3810, ECF 30 at 10; *see id.* at 11.

recover the $5,128.83 based on *res judicata.* This Court's ruling was affirmed by the Fourth Circuit.

* * *

While, compared to the Complaint in the [First] Federal Case, the Complaint in this New Federal Case raises new causes of action against CCIE and Marsden & Seledee as to conspiracy and legal malpractice, those claims are similarly barred by *res judicata.* This is necessarily so because the new causes of action cannot be split from claims which were brought in the underlying cases and, as a practical matter, they are premised on nothing more than Plaintiffs' attempt to re-litigate whether they are obligated to return $5,128.83 to CCIE.

Res judicata, or claim preclusion, is a judicial doctrine by which "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979); *see Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008). The doctrine precludes parties from "contesting matters that they have had a full and fair opportunity to litigate," thereby conserving judicial resources and minimizing the possibility of inconsistent decisions. *Montana*, 440 U.S. at 153–54.

The doctrine of res judicata was "designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" *Laurel Sand & Gravel, Inc.*, 519 F.3d at 161-62 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)) (alteration in *Laurel Sand & Gravel, Inc.*). Of import here, res judicata also extends to claims that could have been asserted and litigated in the original suit. *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013). As noted, *supra*,

The applicable law for purposes of claim preclusion in federal court is the law of the tribunal in which the prior judgment was entered. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *accord Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S.

280, 293 (2005); *Laurel Sand & Gravel, Inc.*, 519 F.3d at 162; *Jones v. HSBC Bank USA, N.A.*, 444 Fed. Appx. 640, 643 (4th Cir. 2011) (per curiam).

The doctrine applies when the following three elements are present: "(1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and later suit, and (3) an identity of parties or their privies in the two suits." *Clodfelter*, 720 F.3d at 210 (citation and quotation marks omitted); *see Weiner v. Fort*, 197 Fed. Appx. 261, 264 (4th Cir. 2006); *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996) ("claim preclusion occurs when three conditions are satisfied: 1) the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; 2) the parties are identical, or in privity, in the two actions; and, 3) the claims in the second matter are based upon the same cause of action involved in the earlier proceeding"); *Young–Henderson v. Spartanberg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir. 1991) (quoting *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981)).

Under Maryland law, application of res judicata requires satisfaction of the same three factors:

> (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation.[9]

*Cochran v. Griffith Energy Servs., Inc.*, 426 Md. 134, 140, 43 A.3d 999, 1002 (2012); *accord Powell v. Breslin*, 430 Md. 52, 63-64, 59 A.3d 531, 538 (2013); *deLeon v. Slear*, 328 Md. 569, 580, 616 A.2d 380, 385 (1992).

---

[9] Maryland courts have held that pendency of an appeal does not affect the finality of a judgment for res judicata purposes. *See Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md. App. 504, 525, 852 A.2d 1029, 1040 (2004).

All of these elements are satisfied here.  First, plaintiffs have been parties in *at least* two prior actions pertaining to the insurance dispute: as defendants in the District Court of Maryland for Montgomery County, *i.e.*, the State Case and as plaintiffs in this Court in *Mua and Vandenplas v. California Casualty Indemnity Exchange and Marsden & Seledee, LLC*, PJM-14-3810, *i.e.*, the First Federal Case.  As noted, plaintiffs also removed the State Case to federal court.  *See* PJM-15-0060.  But, it was remanded.

Both the State Case and the First Federal Case resulted in final judgments on the merits. After a trial on the merits, the District Court of Maryland for Montgomery County granted judgment in CCIE's favor against Mua and Vandenplas in the amount of $5,128.83, plus costs. *See* ECF 10-2 at 15-16 (copy of the Judgment in the District Court of Maryland).  That judgment was affirmed on appeal and the Maryland Court of Appeals denied plaintiffs' petition for writ of certiorari.  ECF 10-2.

In the First Federal Case, Judge Messitte granted with prejudice Marsden & Seledee's Motion to Dismiss.  *See* PJM-14-3810, ECF 30; ECF 31.  He said, ECF 30 at 4: "[T]here is no conceivable legal theory that, by virtue of providing legal representation, a lawyer or law firm may be sued for such acts as are alleged here."  And, he concluded that the Amended Complaint was "utterly devoid of any alleged acts or omissions that plausibly suggest a violation of this provision of the FDCPA, or any other law" by Marsden & Seledee.  *Id.* at 5.  And, as to CCIE, Judge Messitte granted with prejudice CCIE's Motion for Judgment as to all claims arising out of CCIE's non-renewal of plaintiffs' insurance policy; granted with prejudice CCIE's Motion for Judgment as to the FDCPA claim; and dismissed with prejudice plaintiffs' claims seeking recovery of the $5,128.83 awarded to CCIE in State court.  *See* PJM-14-3810, ECF 30; ECF 31.

In this regard, I note that Judge Messitte dismissed plaintiffs' claims seeking to recover the $5,128.83 on the basis of res judicata. ECF 30 at 8-10.  He said, *id.* at 10: "[T]o the extent that any of Plaintiffs' claims in the present case seek to recover the $5,128.83 awarded to CCIE in the Montgomery County District Court, such a claim would nullify the County District Court's judgment, and is barred by res judicata." Judge Messitte's ruling was affirmed by the Fourth Circuit.  *See* PJM-14-3810, ECF 37.  Accordingly, plaintiff's previous suits in the District Court of Maryland for Montgomery County and in this Court satisfy the first element.

Second, a claim in an earlier federal action is "identical" for purposes of res judicata if it "involves a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action." *Harnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir. 1986); *see Clodfelter*, 720 F.3d at 210 ("[W]e follow the 'transactional' approach when considering whether causes of action are identical: 'As long as the second suit 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment,' the first suit will have preclusive effect.'" (Citation omitted)); *In re Varat Enterprises, Inc.*, 81 F.3d at 1316. Notably, "[u]nder this transactional approach, res judicata will bar a 'newly articulated claim[ ]' if it is based on the same underlying transaction and could have been brought in the earlier action." *Clodfelter*, 720 F.3d at 210 (citing *Laurel Sand & Gravel, Inc.,* 519 F.3d at 162) (second alteration in *Clodfelter.*

"Maryland has adopted the transactional approach, which asks whether the claims in this litigation 'arise[] out of the same transaction or series of transactions as the claim resolved by the prior judgment.'" *Snider Int'l Corp. v. Town of Forest Heights*, 906 F. Supp. 2d 413, 427–28 (D. Md. 2012) (quoting *Laurel Sand & Gravel,* 519 F.3d at 162) (alteration in *Snider Int'l Corp.*), *aff'd.*, 739 F.3d 140 (4th Cir. 2014) "'All matters which were litigated or *could* have been

litigated in the earlier case are conclusive in the subsequent proceeding.'" *Snider Int'l Corp.*, 906 F. Supp. 2d at 428 (quoting *Anne Arundel Cty. Bd. of Educ. v. Norville*, 390 Md. 93, 109, 887 A.2d 1029, 1038 (2005)) (emphasis in original).

In the First Federal Case plaintiffs advanced substantially similar allegations against defendants.  As in this case, plaintiffs (1) sought to relitigate CCIE's recovery of $5,128.83 awarded in the State Case; (2) claimed that CCIE failed to give statutorily required notice when plaintiffs' insurance policy was not renewed in 2012 and/or that the policy was not renewed due to Mua's nationality; (3) alleged entitlement to benefits payable under the insurance policy (e.g., rental car reimbursement); and (4) alleged that, in pursing the State Case, CCIE and its attorneys, Marsden & Seledee, violated the FDCPA.  And although plaintiffs in this case were defendants in the State court case, the State Case involved the same transaction or series of transactions at issue in this case:  the alleged insurance overpayment Mua and Vandenplas received after the 2011 motor vehicle accident.

In the case *sub judice*, plaintiffs have added a count for conspiracy (Count V), claiming that CCIE and Marsden & Seledee  tampered with court documents in the State Case (ECF 1, ¶¶ 51-52); and a count for legal malpractice (Count XII), claiming either that CCIE and Marsden & Seledee  should not have brought the State Case, or that the garnishment proceedings in the State Case are somehow improper.  ECF 1, ¶¶ 105-116.  However, that plaintiff has repackaged his core allegations as different causes of action is irrelevant. "A plaintiff's invocation of a different legal theory in the subsequent action" does not preclude application of res judicata. *Onawola v. Johns Hopkins Univ.*, AMD-07–870, 2007 WL 5428683, at *1 (D. Md. Sept. 24, 2007) (citing *Harnett*, 800 F.2d at 1314); *see* Restatement (Second) of Judgments § 24(2) cmt. c (1982).

Accordingly, to the extent that plaintiffs rely on a theory of relief that differs from his prior cases, this does not bar application of res judicata in this case.

Finally, parties are in privity when they "represent the same legal right in respect to the subject matter involved." *Martin v. Am. Bancorporation Ret. Plan*, 407 F.3d 643, 651 (4th Cir. 2005). Mua, Vandenplas, and CCIE were parties to the State Case. Those same parties, as well as Marsden & Seledee, were parties to the First Federal Case. Consequently, the privity requirement is readily met.

Accordingly, all three elements of res judicata are satisfied here.

Nonetheless, plaintiffs argue that res judicata is not applicable here because the judgment in the State Case was obtained as a result of extrinsic fraud. *See* ECF 31 at 23-24. Plaintiffs assert that the fraudulent conduct included "tampering of transcripts, tampering of court documents including on October 31st, 2014, December 8th, 2014, December 10th, 2014 and other dates." *Id.* at 23. As best I can determine, plaintiffs seem to allege that the trial judge in the State Case found that their counterclaim was untimely after the defendants fraudulently tampered with the date on their court filings. ECF 31 at 7-8. *See also* ECF 31 at 24 ("The U.S. Federal District court, Montgomery county District court, Montgomery County Circuit Court relied on fraudulent conduct of the defendants.... This court should vacate the judgments of the lower court in the interest of justice.").

The first problem with plaintiffs' argument that res judicata does not apply here is that it could have been raised in the First Federal Case. To be sure, there is a fraud exception to res judicata. *See Resolute Ins. Co. v. State of N.C.*, 397 F.2d 586, 589 (4th Cir. 1968) (stating that there can be an exception to res judicata based upon fraud, deception, accident, or mistake). But,

given the heightened pleading standard of Fed. R. Civ. P. 9(b), plaintiffs have not adequately pleaded that the judgment in the State Case was obtained as a result of fraud.

Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *See, e.g.*, *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (stating that a Maryland Consumer Protection Act claim that "sounds in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)"); *E–Shops Corp. v. US Bank N.A.*, 678 F.3d 659, 665 (8th Cir. 2012) ("Rule 9(b)'s heightened pleading requirement also applies to statutory fraud claims.").  Under Rule 9(b), a plaintiff alleging a claim that sounds in fraud "'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010) (citation omitted). In other words, "'Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story.'" *Crest Construction II, Inc. v. Doe,* 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted).

Rule 9(b) serves several salutary purposes.  In *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir. 1999), the Fourth Circuit said (quoting *U.S. ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.*, 755 F. Supp. 1055, 1056-57 (S.D. Ga. 1990) (alteration in *Harrison*)):

First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

To be sure, a "court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784. Moreover, Rule 9(b) is "less strictly applied with respect to claims of fraud by concealment" or omission of material facts, as opposed to affirmative misrepresentations, because "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation.'" *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997) (citation omitted); *accord Piotrowski v. Wells Fargo Bank, N.A.,* No. DKC 11–3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013). But, in the context of a res judicata defense, when a plaintiff claims that a prior judgment was obtained as a result of fraud, a court should beware of "a thinly veiled attempt to thwart the process of dispensing justice by relitigating matters which have been decided in a court of competent jurisdiction." *Resolute Ins. Co.*, 397 F.2d at 589.

In the State Case, plaintiffs attempted to bring a counterclaim for many of the same causes of action that they sought to pursue in PJM-14-3810 and PJM-15-060. The District Court of Maryland for Montgomery County initially struck the counterclaim, concluding that it was untimely and because the amount sought by Mua and Vandenplas exceeded the jurisdictional limit of the court. *See* State Case Docket, ECF 10-2 at 7. At a subsequent hearing, the State judge, Eugene Wolfe, explained to Mua and Vandenplas that the counterclaim had been timely

filed, but had been erroneously deemed untimely, due to a docketing error.  *See* February 23, 2015 Hearing Transcript, ECF 10-3 at 5.  Nevertheless, the judge also explained that the counterclaim was properly stricken on another ground: the damages claim exceeded the jurisdictional limit of the court.  *Id.*  The judge said, ECF 10-3 at 5: "[Y]our counterclaim was for one and a half million dollars, we do not have jurisdiction over anything over $30,000. So even if [the trial judge] was in error because of the date [that the counterclaim was filed], he was correct because of the amount. So we have absolutely no jurisdiction on that counterclaim. So it was properly denied..."  *See* Md. Code (2013 Repl. Vol.), § 4-401(1) of the Courts and Judicial Proceedings Article ("C.J.") (stating that the District Court has exclusive original jurisdiction in "[a]n action in contract or tort, if the debt or damages claimed do not exceed $30,000, exclusive of prejudgment or postjudgment interest, costs, and attorney's fees if attorney's fees are recoverable by law or contract").

In the First Federal Case, Judge Messitte recognized that the State court dismissed the counterclaim for lack of jurisdiction "because Plaintiffs sought over $1.5 million in damages, whereas the County District Court only has jurisdiction for actions in contract or tort if the debt or damages claimed do not exceed $30,000."  PJM-14-3810, ECF 30 at 9.

Therefore, I shall dismiss with prejudice the following claims brought against CCIE and Marsden & Seledee on the basis of res judicata: 1) all claims pertaining to, related to, or arising from plaintiffs' challenge to the $5,128.83 awarded to CCIE in the District Court of Maryland for Montgomery County; 2) all claims arising out of CCIE's non-renewal of plaintiff's automobile insurance policy; and 3) all claims pertaining to a violation of the FDCPA.  These rulings dispose of all federal claims against CCIE and The Firm.

2.   Claim for Benefits Payable Under the Insurance Policy

The only remaining claim is a State law claim against CCIE for benefits payable under the insurance policy, including rental car fees.   Defendants construe this claim as a first-party bad faith claim.   Insurance bad faith, or failure to act in good faith, is a statutory cause of action under Maryland law.   *See* C.J. § 3-1701; Md. Code (2011 Repl. Vol.), § 27-1001 of the Insurance Article ("Ins.").   C.J. § 3–1701(d) authorizes a cause of action against an insurer that fails to act in good faith in denying coverage, and C.J. § 3–1701(e) authorizes the insured to recover "actual damages," up to the limits of the applicable insurance policy, along with attorney's fees, expenses, other litigation costs, and interest.   C.J. § 3–1701(a)(5) requires an insurer to make "an informed judgment [about coverage] based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim."   *See also* Ins. § 27–1001(a) (stating that good faith "means an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim.").

Defendants argue that plaintiffs' first-party bad faith claims are barred due, *inter alia*, to plaintiffs' failure to exhaust administrative remedies with the Maryland Insurance Administration.   ECF 10-1 at 9.

As mentioned earlier, defendants do not argue that plaintiffs' first-party bad faith claims for benefits payable under the insurance policy, including car rental fees, are barred by res judicata.   This is because, in the First Federal Case, Judge Messitte dismissed this claim without prejudice, for lack of subject matter jurisdiction.   PJM-14-3810, ECF 30 at 10; *see id.* at 11. Accordingly, there was no final judgment on the merits as to this claim.

As I see it, this Court lacks subject matter jurisdiction as to this claim.  Therefore, I need not reach CCIE's administrative exhaustion argument.

The Complaint alleges federal question and diversity jurisdiction.  ECF 1 at 4.  As noted, the FDCPA claim is the only federal claim brought against CCIE and The Firm.  And, I have dismissed the FDCPA claim due to res judicata.  Accordingly, the only remaining basis for this Court's jurisdiction is on diversity grounds.  *See* 28 U.S.C. § 1332.

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  Indeed, a federal court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *see also Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006).

Under 28 U.S.C. § 1332(a)(1), federal district courts have subject matter jurisdiction over "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between...citizens of different States."  Plaintiffs are citizens of Maryland (ECF 1, ¶¶ 1-2) and CCIE is a citizen of California, where it is incorporated.  However, this claim plainly fails to satisfy the threshold amount-in-controversy requirement of $75,000.

As noted, in the First Federal Case, Judge Messitte dismissed any claims against CCIE regarding entitlement to "benefits purportedly owed under the insurance policy," without prejudice, for lack of subject matter jurisdiction.  PJM-14-3810, ECF 30 at 10; *see id.* at 11.  Judge Messitte ruled that this Court lacked jurisdiction to hear plaintiffs' first-party bad faith claims against CCIE for benefits payable under the policy because the claims "plainly" did not

satisfy the minimum $ 75,000 amount-in-controversy requirement, as set forth in 28 U.S.C. §

1332 for a diversity action. *Id.* at 10-11.[10]  Judge Messitte explained, *id.* at 11:

> Notwithstanding Plaintiffs' utterly fantastic and implausible request for "compensatory
> damages in the amount of $500,000," it is beyond a doubt that Plaintiffs' only remaining
> claim is a simple contract or tort claim to recover, at most, a few thousand dollars in
> rental car fees or the like. The Court lacks jurisdiction to hear such a claim.

The Fourth Circuit has explained that a federal court lacks jurisdiction when it "is plain

from the complaint that an amount less than the jurisdictional amount is all that is at issue[,]" as

when the "plaintiff has alleged only a small amount of damages or it is otherwise obvious that

the jurisdictional amount under § 1332(a) cannot be satisfied." *Shanaghan v. Cahill*, 58 F.3d

106, 112 (4th Cir. 1995).  Notwithstanding "plaintiffs' utterly fantastic and implausible request"

for compensatory and punitive damages in the amount of $10,000,000, "it is beyond a doubt that

Plaintiffs' only remaining claim is a simple contract or tort claim to recover, at most, a few

thousand dollars in rental car fees or the like."  PJM-14-3810, ECF 30 at 11. The Court lacks

jurisdiction to hear such a claim.

Moreover, I decline to exercise supplemental jurisdiction over this remaining State law

claim. *See* 28 U.S.C. § 1367(c). Pursuant to § 1367(c)(3), a district court "may decline to

exercise supplemental jurisdiction over a claim... if...the district court has dismissed all claims

over which it has original jurisdiction." In *Shanaghan,* 58 F.3d at 110, the Fourth Circuit

recognized that under § 1367(c)(3) "trial courts enjoy wide latitude in determining whether or

not to retain jurisdiction over state claims when federal claims have been extinguished." *See also*

*ESAB,* 685 F.3d at 394 ("Section 1367(c) recognizes courts' authority to decline to exercise

supplemental jurisdiction in limited circumstances, including ... where the court dismisses the

---

[10] As Judge Messitte dismissed plaintiffs' FDCPA claims, the only remaining basis for
this Court's jurisdiction was on diversity grounds.  PJM-14-3810, ECF 30 at 11, n. 8.

claims over which it has original jurisdiction."); *Hinson v. Norwest Fin. S. Carolina, Inc.,* 239 F.3d 611, 616 (4th Cir. 2001) (stating that, "under the authority of 28 U.S.C. § 1367(c), authorizing a federal court to decline to exercise supplemental jurisdiction, a district court has inherent power to dismiss the case ... provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met"). *See, e.g., Ramsay v. Sawyer Property Management of Maryland, LLC,* 948 F.Supp.2d 525, 537 (D. Md. 2013) (declining to exercise supplemental jurisdiction over plaintiff's MCDCA and MCPA claims after dismissing FDCPA claims); *Int'l Ass'n of Machinists & Aerospace Workers v. Werner–Masuda,* 390 F.Supp.2d 479, 500 (D. Md. 2005) ("Because the court will dismiss the claims over which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over the remaining state law claims.").

I shall exercise my discretion by declining to retain supplemental jurisdiction over the remaining State law claim for benefits payable under the insurance policy.

## C.  The Motion to Strike

CCIE and Marsden & Seledee filed a joint motion to strike (ECF 28, "Motion to Strike"), the Notice of Removal filed by plaintiffs in July 2016, by which they removed to this Court, from the Circuit Court for Montgomery County, the case of *California Casualty Indemnity Exchange v. Mua et. al*, Case 9381D.

As discussed previously, CCIE sued plaintiffs in the District Court for Montgomery County on July 8, 2014.  *See* Case No. 0602-0005340-2014, *i.e.*, the State Case.   Judgment was entered in favor of CCIE in December 2014.  On January 8, 2015, after judgment was entered against Mua and Vandenplas, they filed a Notice of Removal as to the State Case.  PJM-15-0060, ECF 1.   Judge Messitte remanded the case to the State.  *See id.*, ECF 38 (Memorandum); *id.*,

ECF 39 (Order).  He found that the Notice of Removal was untimely and that the Court lacked

subject matter jurisdiction.  Judge Messitte explained, ECF 38 at 3:

> First, there is no basis for removal jurisdiction based on diversity, where both
> Defendants appear to be citizens of Maryland.  28 U.S.C. §
> 1441(b)….Alternatively, "[t]o remove an action based on federal question
> jurisdiction, the federal question 'must be an element, and an essential one of the
> plaintiff's cause of action,'" Defendants identify no constitutional provision or
> federal statute on which the state action could been originally filed in this court.
> To the extent Defendants are attempting to assert a counterclaim presenting a
> federal question, they provide no jurisdictional basis for removal because those
> claims were not the subject matter of the state court case they are attempting to
> remove.

After the case was remanded, the ruling in the State Case was affirmed by the Circuit

Court for Montgomery County.  On January 29, 2016, the Court of Appeals of Maryland denied

plaintiffs' petition for a writ of certiorari.  ECF 25-5.  On April 20, 2016, after CCIE undertook

garnishment proceedings in the State Case, plaintiffs filed a second notice of appeal to the

Circuit Court for Montgomery County.  ECF 25-32.   This second appeal was assigned case

number 9381D.

Plaintiffs then attempted to remove the case to this Court, for the second time, on July 15,

2016.  ECF 24. The Circuit Court for Montgomery County closed Case. No. 938lD upon the

filing of the Notice of Removal. *See* Docket No. 8 in Case No. 9381D; *see also* ECF 28-1 at 3

(Case No. 9381D docket).

In the Motion to Strike, defendants argue that the Notice of Removal "is outrageously

untimely. It was filed more than two years after the State Case was filed…"  ECF 28 at 4. They

add, *id.*: "Moreover there was never any basis for removal even assuming that the Notice of

Removal had been timely. There was no basis for removal jurisdiction based on diversity (since

Mr. Mua and Ms. Vandenplas are citizens of Maryland) and no federal question was raised in the

State Case."

A civil action filed in state court may be removed to federal court if it is one over which the district court has original jurisdiction. 28 U.S.C. § 1441(a). The burden of demonstrating jurisdiction and propriety of removal rests with the removing party. *Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811, 815 (4th Cir. 2004); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010); *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010). Thus, "[i]f a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008) .

"Because removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108–09 (1941)). Indeed, a federal court "should construe removal statutes narrowly, [with] any doubts...resolved in favor of state court jurisdiction." *Barbour v. Int'l, Union,* 640 F.3d 599, 617 (4th Cir. 2011) (en banc) (abrogated in part on other grounds by the Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112–63, 125 Stat. 758(Dec. 7, 2011)); *see also Cohn v. Charles*, 857 F.Supp.2d 544, 547 (D. Md. 2012) ("Doubts about the propriety of removal are to be resolved in favor of remanding the case to state court.").

To effect removal, a defendant must file a notice of removal in the district court within thirty days of receipt of a copy of the initial pleading setting forth the claim for relief in the action.  28 U.S.C. § 1446(a) & (b).  Here, Mua and Vandenplas attempted to remove the State Case, for the second time, more than two years after the case was filed and after noting a second appeal in a State court.  I agree with defendants that the Notice of Removal is untimely.

Moreover, Judge Messitte has already remanded the same case to State court. Plaintiffs may not seek to circumvent that ruling by filing a new Notice of Removal with a different judge. For the reasons articulated above and by Judge Messitte, I shall grant the Motion to Strike the Notice of Removal and I shall remand Case No. 9381D to the Circuit Court for Montgomery County.

### D.  The Motion for Sanctions

In their Motion for Sanctions (ECF 25), CCIE and The Firm request attorneys' fees and costs, as well as monetary sanctions. Defendants also ask "this Court [to] enjoin Plaintiffs from filing any pleadings in this Court which arise out of or relate to the underlying events in this lawsuit without first obtaining approval from the Chambers Judge of this Court." ECF 25.

Defendants argue that sanctions and a pre-filing injunction are warranted in light of plaintiffs' "long history of filing frivolous actions seeking to re-litigate the State Case." ECF 25-1. According to defendants, "Plaintiffs have attacked the judgment in the State Case in no fewer than twenty-seven (27) different filings in at least five (5) different courts." *Id.* at 18. These courts include, *id.* at 17: "(1) the District Court of Maryland for Montgomery County; (2) the Circuit Court of Maryland for Montgomery County; (3) the Court of Appeals of Maryland; (4) the United States District Court for the District of Maryland; and ( 5) the United States Court of Appeals for the Fourth Circuit." Moreover, defendants claim, ECF 40 at 2 (emphasis in original): "Plaintiffs continued to generate a tremendous amount of frivolous pleadings in their duplicative cases pending against CCIE…With the exception of Mr. Mua's and Ms. Vandenplas's requests for extension and postponement (*31 requests since late last year*)[], all of their requests have been rejected by every court."

Fed. R. Civ. P. 11 authorizes a district court to impose sanctions.  Rule 11(b) provides, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

"The primary purpose of Rule 11 is to punish violators and deter parties and their counsel from pursuing unnecessary or unmeritorious litigation." *Moody v. Arc of Howard Cnty., Inc.,* 474 F. App'x 947, 950 (4th Cir. 2012) (per curiam). "[A] complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to [Rule 11] sanctions." *In re Kunstler,* 914 F.2d 505, 516 (4th Cir. 1990). In *Morris v. Wachovia Securities, Inc.,* 448 F.3d 268, 277 (4th Cir. 2006), the Fourth Circuit said plainly: "Factual allegations fail to satisfy Rule 11(b)(3) when they are 'unsupported by any information obtained prior to filing.'" (Citation omitted).

Fed. R. Civ. P. 11(c)(2) permits a party to file a motion for sanctions against another party for violation of Rule 11(b), provided that, before filing the motion with the court, the moving party must serve it on the opposing party and give the opposing party 21 days to withdraw "the challenged paper, claim, defense, contention, or denial."

Pursuant to Rule 11(c)(2), a motion for sanctions must be served upon the opposing party, "but it must not be filed or be presented to the court if the challenged paper, claim,

defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." In other words, Rule 11's "safe harbor" provision requires the party seeking sanctions to provide his adversary with notice and an opportunity to withdraw the offensive pleading prior to filing a motion for sanctions with the court. *See Brickwood Contractors, Inc. v. Datan et Eng'g, Inc.,* 369 F.3d 385, 388–89 (4th Cir. 2004). If this requirement is not satisfied, "the district court lacks authority to impose the requested sanctions." *Id.* at 389.

In my view, and as articulated by Judge Messitte in his two related cases, this case does "cry out for the imposition of sanctions." PJM-14-3810, ECF 63 at 1. As Judge Messitte has explained, *id.*: "In both State and Federal Court [plaintiffs] have litigated over and over the same questions against essentially the same Defendants, occasionally adding one or more new Defendants along the way. Their claims have been rejected by virtually every Court at every level that has considered them." Although Judge Messitte "reluctantly" (*id.* at 2) decided not to impose sanctions in PJM-14-3810 and PJM-16-60, because he doubted sanctions would deter plaintiffs from continuing to pursue their litigation, he noted that plaintiffs were "given fair warning." *Id.* at 3. He said, *id.*: "If in any fashion, they persist in pursuing or filing these repeated cases, the Court will entertain a motion by Defendants to reopen the present cases, revive their requests for sanctions in the cases and, if appropriate, impose new and further sanctions in connection with any subsequent filings."

Nevertheless, I conclude that sanctions are not appropriate under Fed. R. Civ. P. 11, because there is no indication that defendants complied with the procedural requirements of Rule 11. In particular, there is no indication that defendants served their motion for sanctions on plaintiffs before submitting it to the Court. In fact, the Certificate of Service attached to the

Motion indicates that plaintiffs were served on the same date that the Motion for Sanctions was filed.

However, defendants do not seek only sanctions. They have also moved for a pre-filing injunction against plaintiffs for any actions related to the subject matter of this suit.

"[T]he All Writs Act, 28 U.S.C. § 1651(a) (2000), grants federal courts the authority to limit access to the courts by vexatious and repetitive litigants...." *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). "One means of limiting access is a pre-filing injunction, which should only be used sparingly and be based on a litigant's demonstrated vexatious or repetitive filing of meritless motions and other requests for relief." *Sewell v. Strayer Univ.*, No. CV PWG-16-159, 2017 WL 57212, at *8 (D. Md. Jan. 5, 2017). A pre-filing injunction is appropriate where there exist "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions." *Cromer*, 390 F.3d at 817–18 (citation and internal quotation marks omitted).

A court should consider the following factors when deciding whether to issue a pre-filing injunction: "(1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Id.* at 818. The injunction must be "narrowly tailored to fit the specific circumstances at issue." *Id.*

As of this date, plaintiffs have filed or removed at least five cases to this Court arising from the 2011 automobile motor vehicle accident and the 2014 judgment entered against them for unjust enrichment: PJM-14-3810, PJM-15-0060; ELH-16-3247; ELH-16-3267; and ELH 16-1435 (*i.e.*, the case *sub judice*).

Despite the repetitive and vexatious litigation pursued by plaintiffs over several years, I am not yet persuaded that a pre-filing injunction would be appropriate.  However, plaintiffs are cautioned that their self-represented status does not give them "license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 359 (5th Cir. 1986).  And, plaintiffs are warned that should they persist in filing further cases related to the subject matter of this case, they may subject themselves to the imposition of an injunction prohibiting future filings, except with permission of a judge who has determined that the filing is not vexatious.

### IV. Conclusion

For the reasons stated above, I shall grant the Motion to Dismiss (ECF 10) filed by CCIE and Marsden & Seledee.  I shall also grant the State's Motion to Dismiss (ECF 17).  And, I shall grant the Motion to Strike filed by CCIE and Marsden & Seledee (ECF 28).  However, I shall deny the motion for sanctions and for the pre-filing injunction (ECF 25), filed by CCIE and Marsden & Seledee.

Plaintiffs are admonished that their persistence in pursuing the claims at issue here may result in monetary sanctions and a pre-filing injunction.

An Order follows.


Date:  <u>February 15, 2017</u>              _____/s/_____
                                     Ellen L. Hollander
                                     United States District Judge